1  Scott Thomas Green, SBN 82220
   Shawn S. White, SBN 251470
2  **GREEN & CAMPBELL, LLP**
   1777 E. Los Angeles Ave., Suite 201
3  Simi Valley, California 93065
   Tel.: (805) 306-1100
4  Fax: (805) 306-1300

5  Attorneys for Debtors, Joe and Lyla Alcaraz

6

7              **UNITED STATES BANKRUPTCY COURT**

8      **CENTRAL DISTRICT OF CALIFORNIA- SAN FERNANDO VALLEY DISTRICT**

9  In Re:                              )  Chapter 13 Case
                                       )
10         Alcaraz, Lyla and Joe       )  Case. No. 1:09-bk-22743
                                       )
11                                     )  **NOTICE OF MOTION AND  FIRST**
           Debtors.                    )  **AMENDED MOTION TO DETERMINE**
12                                     )  **SECURED VALUE OF REAL**
                                       )  **PROPERTY; TO STAY POST**
13                                     )  **PETITION PAYMENTS;**
                                       )  **MEMORANDUM OF POINTS AND**
14                                     )  **AUTHORITIES; DECLARATION IN**
                                       )  **SUPPORT**
15                                     )
                                       )
16                                     )  Date:     January 12 2010
                                       )  Time:     09:00 AM
17  _____        )  Place:    21041 Burbank Blvd,
                                                    Woodland Hills CA 91367
18                                         Room:    Courtroom 302 - 3rd floor

19       **TO THE HONORABLE MAUREEN TIGHE, UNITED STATES BANKRUPTCY**

20  **JUDGE, CHAPTER 13 TRUSTEE, PARTIES IN INTEREST AND COUNSEL OF**

21  **RECORD:**

22       **COMES NOW JOE AND LYLA ALCARAZ,** Chapter 13 Debtors ("DEBTORS"), and

23  hereby move this Court to pursuant to 11 U.S.C. §§506(a) and 1325(a)(5)(B) and *In re Lam (Lam*

24  *vs. Investors Thrift)*, 211 B.R. 36 (9th Cir.BAP 1997), for a determination of the secured value of

25  the Real Property located at 718 Calle Jazmin, Thousand Oaks California 91360 (APN-675–0-374-

26  145) (the "REAL PROPERTY") to be $480,000, based upon an appraisal as of November 13,

27  2009, and stay post petition payments by DEBTORS and to treat the claims of, as wholly

28

Green, & Campbell, LLP
Suite 201
1777 E. Los Angeles Ave.
Simi Valley, CA 93065
(805) 306-1100

**NOTICE OF MOTION AND MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY; TO STAY POST PETITION PAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT**

1  unsecured for purposes of plan confirmation, on the grounds that the value of the REAL

2  PROPERTY has declined in value since DEBTORS originally purchased the REAL PROPERTY

3  on August 19 2005, at the price of $725,000, upon which the encumbrances with Bank of America,

4  ("BOFA") and Wells Fargo Bank N.A. ("WFB") loan ending in 1998 are recorded as liens against

5  the Real Property with the Los Angeles County Recorder's Office, such that the value of the REAL

6  PROPERTY no longer has equity adequate to fully secure encumbrances, resulting in WFB being

7  100% undersecured and not entitled to treatment under DEBTORS' proposed Chapter 13 Plan as a

8  secured creditor for the full amount of their purported claim; and on the further grounds set forth in

9  the Memorandum and Authorities, Declaration in Support, filed concurrently herewithin, and on

10  such further grounds as may be presented in oral arguments before this Court or upon Reply to any

11  opposition filed in response to this Motion.

12      NOTICE IS FURTHER GIVEN that in accordance with the Local Rules of this Court,

13  should any party wish to oppose this Motion, they must do so by written opposition filed and

14  served upon counsel for Debtors not less than fourteen (14) days from the date of notice of this

15  Motion, and failure to do so may be deemed a waiver of any opposition which may have been

16  made, resulting in entry of an order granting the within Motion.

17      WHEREFORE, DEBTORS respectfully request the Court grant their Motion, and value the

18  Real Property at $480,000 deeming WFB an undersecured creditor for the purpose of treatment

19  under DEBTOR'S proposed Chapter 13 Plan and that DEBTORS are relieved from making any

20  post petition payments to WFB, and that the Chapter 13 Trustee will not advance to WFB, on

21  account of any proposed Chapter 13 Plan, any payment for the purposes of curing any amount in

22  default or in arrears to WFB, and for such other and further relief as the Court may deem just and

23  proper.

24

25  Dated: 12/2/2009                    GREEN & CAMPBELL, LLP

26                                      By:  _____
                                             Shawn S. White
27                                           Attorneys for Debtors

28

F:\CLIENTS\Alcaraz, Joe and Lyla\Chapter 13 Bankruptcy\Pleading\IAM2nd.wpd

Green, & Campbell, LLP
Suite 201
1777 E. Los Angeles Ave.
Simi Valley, CA 93065
(805) 306-1100

**NOTICE OF MOTION AND MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY; TO STAY POST PETITION PAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

This Motion concerns the valuation of DEBTORS' residential real property located at 718 Calle Jazmin, Thousand Oaks California 91360 (APN-675-0-374-145) (the "REAL PROPERTY"), DEBTORS originally purchased the REAL PROPERTY on August 19 2005, at the price of $725,000, upon which the encumbrances with Bank of America N.A. ("BOFA") loan ending in 2995 and Wells Fargo Bank N.A.("WFB") loan ending in 1998, are recorded as liens against the Real Property with the Los Angeles County Recorder's Office. See, Schedules A and D, attached an incorporated by reference as Exhibits "1" and "2".

At this time, due to the general decline in real estate values in Southern California, which has substantially effected the area in which the Real Property is located, the value of the Real Property has substantially declined in value, no longer entirely supporting the security interest of WFB. In making this Motion, DEBTORS rely upon the appraisal that is attached and incorporated by reference as Exhibit "3". Further, as set forth in DEBTOR'S Declaration filed concurrently herewithin, DEBTORS rely on their understanding as homeowners that the value of the Real Property, as set forth in their Schedules A and D, is comparable to other home values in the area, as of the commencement of this case, which value DEBTORS reasonably believe may continue to decline as of the confirmation of their Chapter 13 Plan. DEBTORS, therefore, believe a valuation of $480,000 is fair and reasonable pursuant to 11 U.S.C. §§506(a) and 1325(a)(5)(B); Zimmer v PSB Lending, 313 F.3d 1220 (9th Cir. 2002), wherein the Ninth Circuit affirmed the allowance of lien stripping in the course of a Chapter 13; In re Lam (Lam vs Investors Thrift), 211 B.R. 36 (9th Cir.BAP 1997); and In re Crain, 243 B.R. 75 (Bankr.CD 1999), for the purpose of valuation of the Real Property and classification of WFB as a Class Five general unsecured creditor in DEBTOR'S Chapter 13 Plan.

F:\CLIENTS\Alcaraz, Joe and Lyla\Chapter 13 Bankruptcy\Pleading\LAM2nd.wpd

Green, & Campbell, LLP
Suite 201
1777 E. Los Angeles Ave.
Simi Valley, CA 93065
(805) 306-1100

- 3 -

**NOTICE OF MOTION AND MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY; TO STAY POST PETITION PAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT**

II.

## FACTUAL BACKGROUND

On September 29, 2009, DEBTORS filed a voluntary petition under Chapter 13, Title 11 United States Code commencing case no. 1:09-bk-22743 (the "Case"), reasonably believing such was needed to stay the foreclosure of their residential Real Property and to enable DEBTORS to reorganize their financial affairs, including concerning the Real Property. The Real Property is DEBTORS' principal residence. As set forth on DEBTORS' Schedule I and J, DEBTORS' income is adequate to make the payments due BOFA, but not those due and owing WFB. See, DEBTOR'S Declaration filed concurrently herewithin.

DEBTORS originally purchased the REAL PROPERTY on August 2005, at the price of $725,000, upon which the encumbrances with BOFA and WFB are recorded as liens against the Real Property with the Los Angeles County Recorder's Office, such that the value of the REAL PROPERTY no longer has equity adequate to fully secure encumbrances, resulting in WFB being 100% undersecured and not entitled to treatment under DEBTORS' proposed Chapter 13 Plan as a secured creditor for the full amount of their purported claim. See, DEBTOR's Declaration filed concurrently herewithin.

III.

## ARGUMENT

A

The Real Property Must be Valued for Purposes of the Chapter 13 Plan Confirmation.

Bankruptcy Code section 506(a) provides in pertinent part that: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property,... and is an unsecured claim to the extent that the value of such creditor's interest... is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use fo such property, and in conjunction with any hearing on such disposition or use or on a plan*

F:\CLIENTS\Alcaraz, Joe and Lyla\Chapter 13 Bankruptcy\Pleading\LAM2nd.wpd

- 4 -

Green, & Campbell, LLP
Suite 201
1777 E. Los Angeles Ave.
Simi Valley, CA 93065
(805) 306-1100

**NOTICE OF MOTION AND MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY; TO STAY POST PETITION PAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT,**

1  *affecting such creditor's interest.* [emphasis added]."

2      In the case of In re Taffi, 144 B.R. 105, 109 (Bankr.C.D.Cal.1992), he Honorable Vincent

3  P. Zurzolo, Bankruptcy Judge, considered the factors relevant to a determination of a motion to

4  determine the secured portion of a claim. In that decision, Judge Zurzolo reasoned that "[i]t would

5  appear from the above quoted language that the value of a lien creditor's interest in collateral that

6  is property of a bankruptcy estate must be determined after considering two factors: (1) the purpose

7  of the valuation and (2) the proposed disposition or use of the property." The Bankruptcy Appellate

8  Panel in the case of In re Lam, 211 B.R. 36 (9th Cir. 1997), considered the exact facts set forth in

9  this case and, held the undersecured creditor would be stripped of its lien and treated as an

10  unsecured creditor in the course of the debtors' Chapter 13 Plan. The Court required a finding that

11  the undersecrued creditor must be *wholly undersecured*, with not even a one dollar amount of

12  secured value. Judge Zurzolo revisited his reasoning in Taffi in the case of In re Crain, 243 B.R. 75

13  (Bankr.CD1999), in which it was held that valuation of the real property collateral will be made as

14  of the date of confirmation, and not as of the commencement date. IN the case of Zimmer v. PSB

15  Lending, 313 F.3d 1220 (9th Cir. 2002), the Ninth Circuit took up the Lam issue, and held that "...

16  more simply, a claim such as a mortgage is not a "secured claim" to the extent that it exceeds the

17  value of the property that secures it. Under the Bankruptcy Code, "secured claim" is thus a term of

18  art; not every claim that is secured by a lien on property will be considered a "secured claim." Id. at

19  1233.

20      At this time, due to the general decline in real estate values in Southern California, which

21  has substantially effected the area in which the Real Property is located, the value of the Real

22  Property has substantially declined in value, no longer entirely supporting the security interest of

23  WFB. In making this Motion, DEBTORS rely upon the appraiser's opinion that is attached and

24  incorporated by reference as Exhibit "3" to the Declaration filed concurrently herewithin. Further,

25  as set forth in DEBTOR's Declaration filed concurrently herewithin, DEBTORS rely on their

26  understanding as homeowners that the value of the Real Property, as set forth in their Schedules A

27  and D, is comparable to other home values in their area, as of the commencement of this case,

28

F:\CLIENTS\Alcaraz, Joe and Lyla\Chapter 13 Bankruptcy\Pleading\LAM2nd.wpd

Green, & Campbell, LLP
Suite 201
1777 E. Los Angeles Ave.
Simi Valley, CA 93065
(805) 306-1100

**NOTICE OF MOTION AND MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY; TO
STAY POST PETITION PAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES;
DECLARATION IN SUPPORT**

1  which value DEBTORS reasonable believe may continue to decline as of the confirmation of their

2  Chapter 13 Plan. DEBTORS, therefore, believe a valuation of $475,000 is fair and reasonable for

3  the purpose of valuation of the Real Property and classification of WFB as a Class Five general

4  unsecured creditor in DEBTOR'S Chapter 13 Plan.

B.

The Valuation of the Real Property Is Necessary for an Effective Reorganization and Debtors

Should Not Be Required to Make Post Petition Payments

8  As provided in Section 506(a), valuation of the secured interest should take place "... in

9  conjunction with any hearing... on a plan affecting such creditor's interest." This Motion is made in

10  conjunction with DEBTORS' Chapter 13 Plan. Debtors have demonstrated under Section 506(a)

11  that the Real Property is valued less than the security interest of WFB, and that a reorganization is

12  in prospect. Accordingly, WFB is not entitled to post petition payments. See, United Savings

13  Association of Texas v. Timbers of Inwood Forest Association, Limited, 484 U.S. 365, 108 S.Ct.

14  626, 98 L.Ed.2d 740 (1998).

IV.

CONCLUSION

17  DEBTORS respectfully request the Court grant their Motion, and value the Real Property at

18  $480,000, deeming Wells Fargo Bank N.A. an undersecured creditor for the purpose of treatment

19  under DEBTOR'S proposed Chapter 13 Plan and that DEBTORS are relieved from making any

20  post petition payments to Wells Fargo Bank N.A., and that the Chapter 13 Trustee will not advance

21  to Wells Fargo Bank N.A., on account of any proposed Chapter 13 Plan, any payment for the

22  purposes of curing any amount in default or in arrears to Wells Fargo Bank N.A., and for such

23  other and further relief as the Court may deem just and proper.

24  Dated: 12/4/2009                          **GREEN & CAMPBELL, LLP**

25

26  By:_____

27  Shawn S. White
   Attorneys for Debtors

28

F:\CLIENTS\Alcaraz, Joe and Lyla\Chapter 13 Bankruptcy\Pleading\LAM2nd.wpd

Green, & Campbell, LLP
Suite 201
1777 E. Los Angeles Ave.
Simi Valley, CA 93065
(805) 306-1100

**NOTICE OF MOTION AND MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY; TO STAY POST PETITION PAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT**

## SUPPORTING DECLARATION OF JOE AND LYLA ALCARAZ

We, JOE AND LYLA ALCARAZ ("The "Debtors") in Chapter 13 Case 1:09-bk-22743 ("The "Case") filed on September 29, 2009, declare and state as follows:

1. We have personal knowledge of the facts stated in this declaration and could and would testify thereto if called as a witness. We are the owners of the real property located at 718 Calle Jazmin Thousand Oaks CA 91360 (the "Real Property"). We live on the Real Property and disclosed it in our bankruptcy schedules. At the time the Case was filed it was done to stay the foreclosure of our residential Real Property and to enable us to reorganize our financial affairs, including concerning the Real Property.

2. The Real Property is subject to a first deed of trust in favor of creditor Bank of America. Wells Fargo is the servicer of the loan. The balance due as of the filing date was approximately $622,122.17. We do not dispute this amount.

3. The Real Property is subject to a second deed of trust in favor of Wells Fargo Bank who is the owner and servicer of the loan which has a balance of approximately $99,753.21 as of the filing date. We do not dispute this amount. A true and correct copy of a recent statement is attached as "Exhibit 3" and is incorporated herein by this reference.

4. We originally purchased the Real Property in August 2005 at the price of $725,000. At that time both encumbrances with Wells Fargo were recorded as liens against the Real Property with the Ventura County Recorder's Office.

5. Due to the general decline in real estate values in Southern California; which has substantially effected the area in which the Real Property is located, the value of the Real Property

has substantially declined in value to a point where it no longer secures the security interest of the
2nd Deed of Trust.

7. On 11/13/2009 we hired Richard Saly of Saly Appraisals to provide an opinion of the fair
market value of the Real Property. We have no personal or business relationship with Richard
Saly or any other employee or party connected to Saly Appraisals . The appraisal concluded that
the Real Property is worth $480,000.00. In the course of this Chapter 13 case, and in preparation
for this Motion we researched the local listings of pending sales and closed sales and, as a
homeowner, determined the fair market value of the Real Property to be consistent with the value
in the appraisal that is included as "Exhibit 3".

We declare under penalty of penalty that the foregoing are true and correct.

Executed on Dec 1, 2009 at Thousand Oaks California.


Joe Alcaraz


Lyla Alcaraz

## SUPPORTING DECLARATION OF RICHARD SALY

I, RICHARD SALY, declare and state as follows:

1. I am qualified to make this declaration based upon my knowledge of real estate appraising acquired in my six years as a licensed residential appraiser. The Appraiser's Report is attached and incorporated by this reference as Exhibit "1" that was prepared for the purpose of determining the value of the Real Property located at 718 Calle Jazmin Thousand Oaks CA 91361 (Legal Description: Lot 14 Tract 1048 APN: 675-0-374-145) (the "REAL PROPERTY").

2. In the course of preparing the Appraiser's Report I followed the practices and procedures required of my profession in determining the value of the Real Property. I have no pre-existing or existing relationship with either of the DEBTORS, or the attorney for the DEBTORS. I do not own an interest in the Real Property and have not been offered an interest in the Real Property, I was compensated for my services at the time I delivered the Appraiser's Report.

3. Based upon the evaluation and analysis prepared it is my professional opinion, as supported by the attached Appraiser's Report, that the value of the Real Property, as of the date of the Appraiser's Report's approximately $480,000.

Dated 11/23/2009

RICHARD SALY

EXHIBIT  1

B6A (Official Form 6A) (12/07)

IN RE <u>Alcaraz, Lyla Kay & Alcaraz, Joe Cardoza</u>
         Debtor(s)

Case No. <u>**1-09-bk-22743**</u>
          (If known)

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| **Single Family  718 Calle Jazmin, Thousand Oaks, Ca 91360** | **Fee Simple** | C | 500,000.00 | 679,507.00 |
| | | | | |
| | **TOTAL** | | 500,000.00 | |

(Report also on Summary of Schedules)

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

# EXHIBIT 2

B6D (Official Form 6D) (12/07)

IN RE Alcaraz, Lyla Kay & Alcaraz, Joe Cardoza                    Case No. **1-09-bk-22743**
_____
Debtor(s)                                                                    (If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **10710900600**<br>**Ventura County Cu**<br>**6026 Telephone Rd**<br>**Ventura, CA 93003** | | H | **Installment account opened 5/07**<br><br>VALUE $ **24,000.00** | | | | 48,150.00 | 24,150.00 |
| ACCOUNT NO. **65165113933211998**<br>**Wells Fargo Bank N A**<br>**Po Box 31557**<br>**Billings, MT 59107** | | C | **Revolving account opened 3/07**<br><br>VALUE $ **500,000.00** | | | | 99,507.00 | 99,507.00 |
| ACCOUNT NO. **7080146652995**<br>**Wells Fargo Hm Mortgag**<br>**8480 Stagecoach Cir**<br>**Frederick, MD 21701** | | W | **Mortgage account opened 8/05**<br><br>VALUE $ **500,000.00** | | | | 580,000.00 | 80,000.00 |
| ACCOUNT NO.<br><br>VALUE $ | | | | | | | | |

_____ **0** continuation sheets attached

|  | Subtotal<br>(Total of this page) | $ **727,657.00** | $ **203,657.00** |
|---|---|---|---|
|  | Total<br>(Use only on last page) | $ **727,657.00** | $ **203,657.00** |
|  |  | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

© 1993-2009 EZ-Filing, Inc [1-800-998-2424] - Forms Software Only

EXHIBIT  3

## Uniform Residential Appraisal Report

File # 718 Jaz

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | | |
|---|---|---|---|---|
| Property Address  718 Calle Jazmin | | City  Thousand Oaks | State  CA | Zip Code  91360-4918 |
| Borrower  N/A | Owner of Public Record  Alcaraz | | County  Ventura | |

**SUBJECT**

Legal Description  Lot 14 Tract 1048

| | | |
|---|---|---|
| Assessor's Parcel #  675-0-374-145 | Tax Year  08/09 | R.E. Taxes $  4,859.50 |
| Neighborhood Name  N/A | Map Reference  526 G4 | Census Tract  0068.00 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant     Special Assessments $  N/A     ☐ PUD  HOA $  N/A  ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe)  Estimate of Market Value

Lender/Client  Joe Alcaraz     Address  718 Salle Jazmin, Thousand Oaks, CA 91360

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).     MLS

**CONTRACT**

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $  N/A     Date of Contract       Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban ☒ Suburban ☐ Rural | | Property Values | ☐ Increasing ☒ Stable ☐ Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit | 90 % |
| Built-Up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply | ☐ Shortage ☒ In Balance ☐ Over Supply | | | 251  Low | 40 | 2-4 Unit | % |
| Growth | ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time | ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | | | 710  High | 52 | Multi-Family | 5 % |
| | | | | | | | 430  Pred. | 49 | Commercial | 5 % |
| | | | | | | | | | Other | % |

Neighborhood Boundaries     Avenida De Los Arboles (N), 23 Frwy (E), Janss Rd (S), Lynn Rd (W)

Neighborhood Description     Subject is located in a residential community consisting of conforming homes that vary in age, design, & architectural styles, & is located close to schools, highway systems, & local supporting centers. Area demand & marketability are in balance at this time.

Market Conditions (including support for the above conclusions)     There was strong price appreciation from 2000 to 2006 with stabilization in 1st half of '07, declining market in 2nd half of '07 continuing to '08, stabilization beginning in mid '09. Exposure time is typically under 90 days if priced correctly. Interest rates are favorable. Conventional financing is available, but qualifying more difficult than in previous years. REO activity has adversely affected marketability in the neighborhood.

**SITE**

| | | | |
|---|---|---|---|
| Dimensions  Refer to plat map | Area  26,357 SF (APX) | Shape  Irregular | View  None |

Specific Zoning Classification  R1-13     Zoning Description  Single Family Residence

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | | Public | Private |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street  Asphalt | | ☒ | ☐ |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley  None | | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone  C  FEMA Map #  0604220020A  FEMA Map Date  9/29/1978

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | Foundation Walls | Concrete/Average | Floors | Laminate/Carpet/Good |
| # of Stories | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | Stucco/Average | Walls | Drywall/Average |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area      None  sq.ft. | | Roof Surface | Comp Shingle/Average | Trim/Finish | Paint/Average |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish       % | | Gutters & Downspouts | Aluminum/Average | Bath Floor | Tile/Average |
| Design (Style)  1 Story | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | Vinyl/Good | Bath Wainscot | Fiberglass/Average |
| Year Built  1960 | | Evidence of ☐ Infestation | | Storm Sash/Insulated | None/Average | Car Storage | ☐ None |
| Effective Age (Yrs)  49 | | ☐ Dampness ☐ Settlement | | Screens | Yes/Average | ☐ Driveway  # of Cars | |
| Attic | ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities | ☐ Woodstove(s) # | Driveway Surface | Concrete |
| ☐ Drop Stair | ☐ Stairs | ☐ Other  Fuel  Gas | | ☐ Fireplace(s) # | ☒ Fence | ☒ Garage  # of Cars | 2 |
| ☐ Floor | ☒ Scuttle | Cooling ☒ Central Air Conditioning | | ☒ Patio/Deck | ☐ Porch | ☐ Carport  # of Cars | |
| ☐ Finished | ☐ Heated | ☐ Individual ☐ Other | | ☐ Pool | ☐ Other | ☐ Att. ☐ Det. ☐ Built-in | |

Appliances ☐ Refrigerator ☒ Range/Oven ☒ Dishwasher ☐ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:     7  Rooms    3  Bedrooms    2  Bath(s)    1,597  Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)     No special energy efficient items noted. Planters, sprinklers, brick bordered & ribboned driveway.

## Uniform Residential Appraisal Report

File # 718 Jaz

| | | | | |
|---|---|---|---|---|
| There are | 8 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 405,000 | | to $ 559,000 |
| There are | 41 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 275,000 | | to $ 640,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 718 Calle Jazmin | 1350 Calle Pensamiento | | 1350 Call Pimiento | | 2377 Drayton Ave | |
| | Thousand Oaks, CA 91360-4918 | Thousand Oaks | | Thousand Oaks | | Thousand Oaks | |
| Proximity to Subject | | 0.63 miles E | | 0.86 miles NE | | 0.57 miles NW | |
| Sale Price | $ N/A | $ 424,000 | | $ 457,500 | | $ 510,000 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 237.27 sq.ft. | | $ 298.24 sq.ft. | | $ 299.47 sq.ft. | |
| Data Source(s) | | NDC/MLS DOM 19 | | NDC/MLS DOM 17 | | NDC/MLS DOM 113 | |
| Verification Source(s) | | APN: 675-0-292-055 | | APN: 675-0-062-075 | | APN: 522-0-082-035 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | 80% 1st TD | | 40% 1st TD | | 80% 1st TD | |
| Concessions | | Doc #131608 | | Doc #138025 | | Doc #176390 | |
| Date of Sale/Time | | 8/5/09 | | 8/17/09 | | 10/28/09 | |
| Location | Residential | Similar | | Similar | | Similar | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 26357 SF | 20827 SF | +11,000 | 10450 SF | +32,000 | 8696 SF | +35,500 |
| View | None | None | | None | | None | |
| Design (Style) | 1 Story | 1 Story | | 1 Story | | 1 Story | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 49 Yrs. | 49 Yrs. | | 48 Yrs. | | 46 Yrs. | |
| Condition | Average | Inferior | +40,000 | Similar | | Similar | |
| Above Grade | Total  Bdrms.  Baths | Total  Bdrms.  Baths | | Total  Bdrms.  Baths | | Total  Bdrms.  Baths | |
| Room Count | 7  3  2 | 7  4  2 | | 7  4  2 | | 6  3  2 | |
| Gross Living Area | 1,597 sq.ft. | 1,787 sq.ft. | -9,500 | 1,534 sq.ft. | +3,000 | 1,703 sq.ft. | -5,500 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FAU/Cent AC | FAU/Cent AC | | FAU/Cent AC | | FAU/None | +5,000 |
| Energy Efficient Items | Insulation | Insulation | | Insulation | | Insulation | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch/Patio/Deck | Porch/Patio | Similar | | Similar | | Similar | |
| Fireplace | None | None | | 1 FP | -5,000 | 1 FP | -5,000 |
| Pool/Spa | None | None | | Pool/Spa | -30,000 | Pool/Spa | -30,000 |
| Upgrades | | | | | | | |
| Net Adjustment (Total) | | ☒ +  ☐ - | 41,500 | ☐ +  ☐ - | | ☐ +  ☐ - | |
| Adjusted Sale Price | | Net Adj. 9.8 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 14.3 % $ | 465,500 | Gross Adj. 15.3 % $ | 457,500 | Gross Adj. 15.9 % $ | 510,000 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | None | None | None | None |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | NDC | NDC | NDC | NDC |
| Effective Date of Data Source(s) | 10/26/09 | 10/26/09 | 10/26/09 | 10/26/09 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Summary of Sales Comparison Approach    After a thorough search of available data sources, including NDC, Title Companies, MLS, & conversation with local realtors, it was concluded that the comps used are the best available & most indicative of market value. All are located in the market area & would appeal to the same user group. Comps 1-3 are verified closed sales. Comps 4 & 5 are a pending sale & active listing each adjusted to reflect a more probable sale price, with a large adjustment to comp 5 as it appears to be over priced for the market. There were no comps that bracketed subject's site size.

## Uniform Residential Appraisal Report

File # 718 Jaz

**IMPROVEMENT COMMENTS:**

Subject is an average quality tract home that has been maintained & upgraded over the years, thus reducing the effective age. Interior features include smooth ceilings & released lighting in the living room/office/2 bedrooms; living room, dining area, & office with wood laminate flooring & plantation shutters; kitchen has porcelain tile flooring, ceaser stone counters & backsplash, skylight, & nook area with French doors to an enclosed patio; master bed with vaulted ceiling, ceiling fan, & glass sliders to the rear; master bath has porcelain tile flooring & cultured marble counter; 2nd bath with stone flooring & wainscot.

Public records indicate subject with 4 bedrooms & 6 total rooms. It appears that the 4th bedroom was converted to an office & total room count is apparently incorrect, as appraiser has a 7 room count. The enclosed patio is built in a professional manner, but no permits were presented & no value given.

Major Adjustment Factors Include

$2 per SF site utility (if over 1000 SF difference);
$40,000 per condition increment;
$50 per SF GLA if over 50 SF difference;
$5,000 for cent AC;
$5,000 per fireplace; &
$30,000 for pool & spa.

**FINAL RECONCILIATION COMMENTS:**

The median price of an attached home in the subject's zip code decreased 21.9% for calendar year 2008 (348 sales/median $500,000) & increased 12.8% when comparing September '08 to September '09 (28 sales/median $529,000) per DataQuick Information Systems. Immediate neighborhood statistics indicate an increase in pricing over the past year. Based on the preceding, it des not appear a time adjustment is necessary.

After adjusting for differences, the value ranges from $457,500 to $510,000. The estimate of market value for the subject property at $480,000 has been bracketed by the comp sale prices & indicated value range, appears reasonable, & is adequately supported by the market data. Comp 1 is given the greatest weight as having close to a similar site size & from the same immediate neighborhood. Comp 2 is given strong consideration as having very similar GLA. Comp 3 is a very recent sale, adds strength to the estimate of value, but given least weight of the closed sales due to not being from the subject tract. Comp 4 is given high consideration due to it being on the same street with a large site. Comp 5, although appearing over priced for the market area, supports the estimated value. All 5 comps are conventional non REO/short Pay transactions.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE ............................................. =$ |
| --- | --- |
| Source of cost data | DWELLING          Sq.Ft. @ $ ............ =$ |
| Quality rating from cost service          Effective date of cost data |                   Sq.Ft. @ $ ............ =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | .................................................................. =$ |
| | Garage/Carport          Sq.Ft. @ $ ............ =$ |
| | Total Estimate of Cost-New .......................... =$ |
| | Less     Physical | Functional | External |
| | Depreciation                                    =$( ) |
| | Depreciated Cost of Improvements .................. =$ |
| | "As-is" Value of Site Improvements ................ =$ |
| Estimated Remaining Economic Life (HUD and VA only)          Years | INDICATED VALUE BY COST APPROACH .................. =$ |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $          X Gross Rent Multiplier          = $ | Indicated Value by Income Approach |
| --- | --- |
| Summary of Income Approach (including support for market rent and GRM) | |

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?   ☐ Yes   ☐ No   Unit type(s)   ☐ Detached   ☐ Attached

# Uniform Residential Appraisal Report

File # 718 Jaz

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal

# Uniform Residential Appraisal Report

File # 718 Jaz

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a

# Uniform Residential Appraisal Report
File # 718 Jaz

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Richard M Saly | Name |
| Company Name  Saly Appraisals | Company Name |
| Company Address  1383 Feather Hill Ct , Thousand Oaks , CA 91320 | Company Address |
| Telephone Number  (805) 376-1365 | Telephone Number |
| Email Address  rsaly@roadrunner.com | Email Address |
| Date of Signature and Report  11/13/09 | Date of Signature |
| Effective Date of Appraisal  11/11/09 | State Certification # |
| State Certification #  AR031986 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License  9/23/2011 | SUBJECT PROPERTY |

# Uniform Residential Appraisal Report

File # 718 Jaz

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address  718 Calle Jazmin | | 612 Calle Jazmin | | 624 Calle Tulipan | | | |
| | Thousand Oaks, CA 91360-4918 | Thousand Oaks | | Thousand Oaks | | | |
| Proximity to Subject | | 0.07 miles NW | | 0.60 miles N | | | |
| Sale Price | $          N/A | $          506,000 LP | | $          495,000 LP | | $ | |
| Sale Price/Gross Liv. Area | $          sq.ft. | $ 370.42 sq.ft. | | $ 373.87 sq.ft. | | $          sq.ft. | |
| Data Source(s) | | NDC/MLS   DOM 71 | | NDC/MLS   DOM 47 | | | |
| Verification Source(s) | | APN: 675-0-374-105 | | APN: 675-0-152-205 | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | CNL | | CNL | | | |
| Concessions | | Less | -6,000 | Less | -45,000 | | |
| Date of Sale/Time | | Pending Sale | | Active Listing | | | |
| Location | Residential | Similar | | Similar | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 26357 SF | 19989 SF | +12,500 | 10000 SF | +32,500 | | |
| View | None | None | | None | | | |
| Design (Style) | 1 Story | 1 Story | | 1 Story | | | |
| Quality of Construction | Average | Average | | Average | | | |
| Actual Age | 49 Yrs. | 49 Yrs. | | 49 Yrs. | | | |
| Condition | Average | Superior | -40,000 | Similar | | | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 7 | 3 | 2 | 6 | 3 | 2 | 6 | 4 | 2 | | | |
| Gross Living Area | 1,597 sq.ft. | 1,366 sq.ft. | +11,500 | 1,324 sq.ft. | +13,500 | sq.ft. | |
| Basement & Finished | None | None | | None | | | |
| Rooms Below Grade | N/A | N/A | | N/A | | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | FAU/Cent AC | FAU/Cent AC | | FAU/None | +5,000 | | |
| Energy Efficient Items | Insulation | Similar | | Similar | | | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | | |
| Porch/Patio/Deck | Porch/Patio | Similar | | Similar | | | |
| Fireplace | None | 1 FP | -5,000 | 1 FP | -5,000 | | |
| Pool/Spa | None | None | | None | | | |
| Upgrades | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $      -27,000 | ☒ + ☐ - | $      1,000 | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj.   5.3 % | | Net Adj.   0.2 % | | Net Adj.   % | |
| of Comparables | | Gross Adj. 14.8 % | $ 479,000 | Gross Adj. 20.4 % | $ 496,000 | Gross Adj.   % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | None | None | None | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | NDC | NDC | NDC | |
| Effective Date of Data Source(s) | 10/26/09 | 10/26/09 | 10/26/09 | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

# Building Sketch

| | | | |
|---|---|---|---|
| Borrower/Client | N/A | | |
| Property Address | 718 Calle Jazmin | | |
| City | Thousand Oaks | County  Ventura | State  CA    Zip Code  91360-4918 |
| Lender | Joe Alcaraz | | |



First Floor
[1596.5 Sq ft]

**Plat Map**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 718 Calle Jazmin | | | | |
| City | Thousand Oaks | County Ventura | State CA | Zip Code 91360-4918 |
| Lender | Joe Alcaraz | | | | |



## Location Map

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 718 Calle Jazmin | | | | |
| City | Thousand Oaks | County Ventura | | State CA | Zip Code 91360-4918 |
| Lender | Joe Alcaraz | | | | |



Main File No. 17ad81    Page #11

## Subject Photo Page

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 718 Calle Jazmin | | | | |
| City | Thousand Oaks | County | Ventura | State CA | Zip Code 91360-4918 |
| Lender | Joe Alcaraz | | | | |



### Subject Front

718 Calle Jazmin

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,597 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | None |
| Site | 26357 SF |
| Quality | Average |
| Age | 49 Yrs. |



### Subject Rear



### Subject Street

**Subject Photo Page**

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 718 Calle Jazmin | | | | | |
| City | Thousand Oaks | County | Ventura | State | CA | Zip Code 91360-4918 |
| Lender | Joe Alcaraz | | | | | |



### Living Room

| | |
|---|---|
| 718 Calle Jazmin | |
| Sales Price | N/A |
| Gross Living Area | 1,597 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | None |
| Site | 26357 SF |
| Quality | Average |
| Age | 49 Yrs. |



### Dining Room



### Kitchen

**Subject Photo Page**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 718 Calle Jazmin | | | | |
| City | Thousand Oaks | County | Ventura | State CA | Zip Code 91360-4918 |
| Lender | Joe Alcaraz | | | | |



**Office**

| 718 Calle Jazmin | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,597 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | None |
| Site | 26357 SF |
| Quality | Average |
| Age | 49 Yrs. |



**Master Bed**



**Master Bath**

**Comparable Photo Page**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 718 Calle Jazmin | | | | |
| City | Thousand Oaks | County | Ventura | State CA | Zip Code 91360-4918 |
| Lender | Joe Alcaraz | | | | |



### Comparable 1

1350 Calle Pensamiento

| Prox. to Subject | 0.63 miles E |
|---|---|
| Sales Price | 424,000 |
| Gross Living Area | 1,787 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Similar |
| View | None |
| Site | 20827 SF |
| Quality | Average |
| Age | 49 Yrs. |



### Comparable 2

1350 Call Pimiento

| Prox. to Subject | 0.86 miles NE |
|---|---|
| Sales Price | 457,500 |
| Gross Living Area | 1,534 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Similar |
| View | None |
| Site | 10450 SF |
| Quality | Average |
| Age | 48 Yrs. |



### Comparable 3

2377 Drayton Ave

| Prox. to Subject | 0.57 miles NW |
|---|---|
| Sales Price | 510,000 |
| Gross Living Area | 1,703 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Similar |

**Comparable Photo Page**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 718 Calle Jazmin | | | | |
| City | Thousand Oaks | County Ventura | | State CA | Zip Code 91360-4918 |
| Lender | Joe Alcaraz | | | | |



### Comparable 4

612 Calle Jazmin

| Prox. to Subject | 0.07 miles NW |
|---|---|
| Sales Price | 506,000 LP |
| Gross Living Area | 1,366 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Similar |
| View | None |
| Site | 19989 SF |
| Quality | Average |
| Age | 49 Yrs. |



### Comparable 5

624 Calle Tulipan

| Prox. to Subject | 0.60 miles N |
|---|---|
| Sales Price | 495,000 LP |
| Gross Living Area | 1,324 |
| Total Rooms | 6 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Similar |
| View | None |
| Site | 10000 SF |
| Quality | Average |
| Age | 49 Yrs. |

**6**

Prox. to Subject
Sales Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location